## MEAD v. MEAD et ux.

The books of account of an executor, superseded by an administrator who sues to foreclose a mortgage, which show no payment by the mortgagor, are properly received in evidence on the issue of payment, in the absence of anything to show any alterations in the books, though the executor declared that the books did not contain a full account, and that the mortgagor had paid the mortgage.

Where the books of account of an executor, superseded by an administrator who sues to foreclose a mortgage, did not show payment relied on by the mortgagor as a defense, the statement of the executor as to the reasons for his omission to credit the payment was properly excluded as a conclusion.

Where an executor, superseded by an administrator who sues to foreclose a mortgage, testified to the payment of the mortgage by the mortgagor, and to a conversation with the county judge as to a satisfaction of the mortgage, the exclusion of the testimony of the county judge as to the conversation was not prejudicial to the mortgagor; the statements of the executor as to the conversation not being contradicted.

Where, in an action by an administrator to foreclose a mortgage of the estate, the defense of payment was relied on, evidence that the administrator was induced to bring the action by the deception of the attorneys of the estate was irrelevant.

The authority of counsel to maintain the action must be challenged by motion to dismiss.

In an action by an administrator to foreclose a mortgage of the estate, evidence **held** to justify a finding that the mortgage had not been paid.

(Opinion filed, October 3, 1911.)

Appeal from Circuit Court, Moody County; Hon. J. W. Jones, Judge.

Action by Mary A. Mead, as administratrix with will annexed of Margaret J. Mead, against Michael F. Mead and wife. From a judgment for plaintiff, defendants appeal. Affirmed.

*Coleman & Blewitt,* for appellants. *Rice & Benson,* for respondent.

HANEY, J. This is an action by the administratrix of the estate of Margaret J. Mead, deceased, to foreclose a real estate mortgage securing a promissory note for $655.65. Directly following Margaret J. Mead's death, Frank J. Mead was appointed executor, acting as such for about two years, when he was superseded by the plaintiff as administratirix. The defendants admit having executed the note and mortgage, but allege payment to Frank J. Mead while executor. The plaintiff is defendant's daughter. The defendants are husband and wife. Frank J. and defendant Michael F. Mead are decedent's sons. The trial court found the note had not been paid, entered judgment accordingly, refused a new trial, and this appeal was taken. The plaintiff having introduced the note and mortgage, which disclosed no evidence of any payments, defendants offered evidence tending to establish their defense and the plaintiff offered evidence in rebuttal.

[1] Assignments of error 11 and 12 relate to plaintiff's Exhibit L, being page 382 of Frank Mead's ledger, purporting to be his account with the "Mead Estate." Frank Mead, who was called as a witness for the defendants, having testified that the defendant Michael Mead paid the note to him while he was .executor, stated on cross-examination; "To the best of my knowledge they [the witness' books of account] were correct at the time I turned them over. They were turned over to Mr. Bigelow, and, as far as I know, have been in his possession ever since. That page, Exhibit L, in my ledger, is my account with a quarter section of land up here belonging to the estate of Margaret Mead. It is the account between the elevator and the farm. I have no other book of account with the Mead estate. I did not keep an account with the Mead estate, only an account between the elevator and the farm. I

did not keep an account of the receipts and disbursements of the estate." On redirect examination he testified: "That account on page 382 is not a full account of mine with the Mead estate. It is just an account between the farm and the elevator." Thereupon Exhibit L was received over the following objection: "That the same is incompetent, irrlevent, and immaterial, and not binding on the defendant, not an admission, nor does it purport to be any record of any transaction between the plaintiff and defendant in this action. Further reason, that the same has not been properly identified. It appears that more than 14 months have elapsed since the witness F. J. Mead had possession. Further reason, that it shows on its face that it is a transaction between parties other than the parties to this action. Further reason, that it appears from the testimony of the witness F. J. Mead, who attempted to identify the record, that it is not a complete account between the estate of Margaret Mead and himself, but only a partial record in regard to the elevator." These objections were properly overruled. The record discloses no fact to support the presumption that the entries in the ledger had been altered. The declaration of the witness that the exhibit was not a full account with the Mead estate was not conclusive. The fact that it contained no reference to the payment alleged to have been made by the defendants was a circumstance, whatever may have been its probative force, to be considered in determining whether such payment was made.

[2] Assignments 3, 4, and 5, are predicated upon these portions of the record which directly follow the introduction of Exhibit L: Recross-examination of Frank J. Mead: "The farm I speak of belonged to the estate. My mother's estate consisted of a house here in Flandreau, this farm I speak of, the note and mortgage of Mike's, and a lot down here. I never got rents from the house in town, nor from the lot here. The account which is marked 'Mead Estate' is an account of what money I got and the transactions I had with the estate, excepting the one of Mike Mead. There are items I paid out that are not there. I never received any money that belonged to the Mead estate except what is shown there, and what I say I got from Mike." Redirect ex-

amination: "Q. A receipt of the money from other sources than the farm would not have been credited in this account? A. No. (Objected to, and asked to strike out. Sustained exception. Defendant offers to prove by this witness that the record of account on page 382 of the ledger introduced in evidence is an account between the farm belonging to the estate of Mead and the elevator; that as such an account it would not contain a record of any money received from other sources of the estate. Plaintiff objects to the offer on the ground that it is incompetent, immaterial, and not proper for the witness to state what it would contain. He testified it contained all the money he had received excepting this one item. Objection sustained. Exception allowed.)" A receipt of the money alleged to have been paid by the defendants certainly might have been credited in the account. The fact that it was not so credited may have tended to discredit Frank Mead's testimony, but neither the question nor offer of proof discloses any reason for the omission. If the question and offer mean anything, they merely express the conclusion of the witness that for some undisclosed reason the payment would not be credited in this particular account. Whether in view of all the evidence the witness would not have been likely to include the alleged payment if it had been made was a matter for argument, an inference to be drawn by the court, a conclusion of the witness which was properly excluded.

[3] W. A. Krause having been sworn as a witness for defendants, the trial proceeded as follows: "I am county judge of this county, and was in 1908. The probate of the estate of Margaret Mead was pending before me at that time. Q. Do you remember at any time of having a conversation with F. J. Mead, executor of the estate, relative to the satisfaction of a mortgage against Mike Mead. A. Yes, sir. (Objected to as incompetent, irrelevant, and immaterial and hearsay; that an agent, representative, or trustee or executor or administrator, etc., admission not binding on this principal. Objection sustained. Exception allowed. Defendant at this time offers to prove by the witness on the stand, for the purpose of showing that at about the time of the payment

claimed to have been made by the defendant in this action, that, in accordance with an understanding shown to have taken place by the testimony of the defendant and F. J. Mead, that he would satisfy the mortgage, and that in obedience to that agreement and understanding that he went to the county judge and directed the satisfaction of the mortgage, basing the offer upon that portion of the record heretofore made wherein the witness F. J. Mead stated he thought the county judge a proper person to interview. Objected to for the same reasons. Objection sustained. Exception allowed.)" The exclusion of this testimony was not reversible error. If Frank Mead talked with the county judge or any other person concerning the alleged payment at a time when presumptively he could have had no improper motive for so doing, it would be a circumstance tending to corroborate his testimony. Frank Mead did swear to such a conversation. It should be presumed that Mr. Krause would have sworn to the same conversation. So the fact that such a conversation occurred stands uncontradicted, and it must be presumed that the trial court so considered it in making its findings of fact.

[4] The plaintiff, called and sworn as a witness for the defendants, having stated that she was the administratrix of the estate of Margaret Mead, deceased, and that Jordan & Warren were attorneys for the estate, was asked these questions: "Did you have any conversation with Jordan & Warren at the time you brought this action as to what its purpose was? (Objected to as incompetent and immaterial. Overruled. Exception allowed.) Q. Did they state to you at that time what the purpose of the action was? (Objected to as incompetent and immaterial. Objection sustained. Exception allowed. Defendants now offer to prove by this witness who is the plaintiff in this action that at the time she was induced to sign the complaint that the attorneys for the estate told her the mortgage had been paid, and it was brought for the purpose of satisfying it, simply of record. Objected to as incompetent, immaterial, and irrelevant. Objection sustained. Exallowed.)" These objections were properly sustained. The evidence did not tend to prove the alleged payment. It may be true

that the plaintiff as administratrix was entitled to control this litigation; that, if she had been deceived as to the nature of the action, she would have a right to withdraw the same; nevertheless, her testimony was irrelevant to any issue presented by the pleadings.

[5] The authority of counsel to maintain the action should have been challenged by a motion to dismiss.

[6] Finally, it is contended the evidence was not sufficient to justify the decision. Both Frank and Michael Mead, as witnesses for the defendants, stated positively that the note was paid, the principal in cash, and interest by a credit for labor performed by Michael for Frank. Neither could have been mistaken. Evidently the trial court concluded that their testimony was not worthy of belief. Both were interested witnesses. Each had a strong motive for establishing the alleged defense. The credibility of each was impaired by inconsistent statements on cross-examination. The note had not been surrendered nor the mortgage satisfied. The alleged payment had not been credited to the estate in Frank Mead's books. The trial court was presided over by a judge of experience who had an opportunity to observe the demeanor of the witnesses. He was in far better position than are the judges of this court to determine the weight which should be given to their testimony. His decision must be sustained.

The judgment and order appealed from are affirmed.